UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shannon Hunt, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>         - against -<br><br>General Mills Sales, Inc.,<br><br>                        Defendant | 1:22-cv-02835<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      General Mills Sales, Inc. ("Defendant") manufactures, markets, labels and sells granola bars represented as containing oats and honey under the Nature Valley brand ("Product").



2. The label statements include "Nature Valley," "Crunchy Granola Bars," "Oats 'n Honey," "16g [or 22g] of Whole Grain*," loose fresh oats, a dripping honey dipper and the statement, "Made With Crispy Oats & Delicious Honey" on a purple seal of approval.





3. The front label representations tell consumers the Product (1) will contain two ingredients – oats and honey and (2) that honey is the primary and/or a significant sweetener ingredient in the Product.

4. Other marketing for the Product, in print, digital and/or social media promote the presence of honey, by stating that "Nature Valley Crunchy bars are made with the **best ingredients** from nature like 100% natural whole grain oats and honey," with a picture of a honey dipper covered with honey and oat flakes, and a handful of fresh oats.



5. The representations are false and misleading because the Product contains ingredients other than oats and honey and contains a *de minimis* amount of honey relative to conventional sugars.

I. SUGAR HAS NEGATIVE EFFECTS

6. According to the National Institutes of Health ("NIH"), numerous studies have established a direct link between excess sugar consumption and obesity, resulting in prevalence of and cardiovascular problems.

7. Doctors and nutritionists concur that consuming excess sugar contributes directly and indirectly to health problems such as weight gain, Type 2 diabetes, dental caries, metabolic syndrome, heart disease, cancer and even dementia.

## II. AVOIDANCE OF SUGAR

8. The serious concerns about obesity and its relationship to sugar consumption has resulted in consumer demand for foods with reduced sugar.

9. Food industry observers explained, "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories."

10. Speakers at the at the International Sweetener conference affirmed that "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

11. Surveys conducted by marketing company Information Resources, Inc. ("IRI") show that 58% of consumers are avoiding sugar, and over 80% are doing so for reasons related to health and weight issues.

## III. CONSUMERS ARE REPLACING SUGAR WITH HONEY

12. Consumers are increasingly seeking foods sweetened with honey instead of sugar.

13. This is confirmed by surveys showing that approximately 60% of consumers look for references to honey on a food's front label.

14. There are several reasons why consumers are seeking foods sweetened with honey instead of sugar.

15. First, almost three-quarters of consumers rate honey as "better-for-you" than sugar.

16. Second, 93% of consumers recognize that honey is a natural sweetener, because unlike sugar, it is not heavily refined through harsh unnatural processes.

17. Third, honey has a lower glycemic index than sugar, causing slower fluctuations in

blood sugar and insulin levels.

18. Sugar consumption causes rapid spikes of blood sugar, leading to quick spurts of energy followed by sharp declines, characterized by tiredness, headaches, and difficulties in concentrating.

19. Fourth, honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness.

20. Fifth, unlike sugar, honey has small but significant amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.

21. For all of these reasons, at least 50% of consumers are willing to pay more for foods primarily sweetened with honey.

## IV. PRODUCT CONTAINS DE MINIMIS AMOUNT OF HONEY

22. Though the front label promotes honey through the name, "Oats n' Honey," the dripping honey dipper, and promise it is "Made With" honey, the amount of honey is less than consumers expect.

23. The representations are false and misleading because the primary sweetening ingredient is sugar, listed as the second ingredient after whole grain oats.

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Rice Flour, Honey, Salt, Brown Sugar Syrup, Baking Soda, Soy Lecithin, Natural Flavor. CONTAINS SOY; MAY CONTAIN PEANUT, ALMOND AND PECAN INGREDIENTS

**Ingredients:** Whole Grain Oats, Sugar, Canola Oil, Rice Flour, Honey, Salt, Brown Sugar Syrup, Baking Soda, Soy Lecithin, Natural Flavor.

24. Honey is listed fifth in the ingredients, after rice flour and before salt.

25. That the amount of honey is negligible is confirmed by multiple methods.

26. First, the Nutrition Facts provides information from which the relative amounts of

5

the ingredients, including honey, can be estimated at.

27. These back-of-the-envelope calculations indicate honey is roughly 2% of the Product's weight.

28. Second, laboratory analysis concludes that based on the sweetener profile of the Product, the amount of honey is approximately 2%.

29. Third, Defendant sells the almost identical product in European markets, where regulations require percentage disclosures of highlighted ingredients.

30. This confirms the other two methods by showing that honey is present at 2%.

**INGREDIENTS**

Whole grain rolled **oats** (59%), sugar, sunflower oil, honey (2%), salt, molasses, emulsifier: sunflower lecithin; raising agent: sodium bicarbonate. For allergens, see ingredients in bold.

**INGREDIENTS**

Whole grain rolled **oats** (59%), sugar, sunflower oil, honey (2%), salt, molasses, emulsifier: sunflower lecithin; raising agent: sodium bicarbonate. For allergens, see ingredients in bold.

31. The versions of the Product sold in Europe and the United States are virtually identical, such that the amount of honey in one version does not differ in any material amount from the other.

32. This is based on equivalence of significant nutritional data between the two versions.

**V. PRODUCT CONTAINS INGREDIENTS OTHER THAN OATS AND HONEY**

33. The representations of "Oats and Honey" with pictures of oats and honey is misleading because the Product contains ingredients besides oats and honey.

34. It is misleading to promote a product as made with certain limited ingredients, even where an ingredient list will contain all ingredients.

35. There is no commercial or technological barrier to formulating a granola bar which only contains oats and honey.

36. There is no functional barrier to producing a granola bar which contains honey as a primary or significant sweetening ingredient.

37. Given the brand name of "Nature's Valley," consumers will expect the granola bar to be made with only oats and honey, because these are natural ingredients, from nature.

38. Consumers are misled to expect a non-negligible amount of honey because of the honey representations described here.

39. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

40. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

41. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

42. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43. Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

44. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.29 for six two-bar pouches, 8.94 OZ (253g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

45. Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

47. The Product has been sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent, with the representations challenged here, for at least 10 years.

48. Plaintiff Shannon Hunt is a citizen of Illinois.

49. Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota.

50. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

51. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

52. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online

53. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's

purchase, consumption, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

54. Plaintiff Shannon Hunt is a citizen of Chicago, Cook County, Illinois.

55. Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

56. Defendant established the Nature Valley brand over forty years ago with the introduction of granola cereal.

57. The brand's name comes from the emphasis placed on using ingredients from nature, understood by consumers as minimally processed without components that would not be expected.

58. In response to the positive reception from consumers of their granola products, Nature Valley created " the world's first-ever granola bar."

59. Defendant is one of the largest food manufacturers in the world with billions of dollars in sales per year.

60. Defendant spends millions of dollars each year on consumer research to identify attributes of products consumers want and will pay more for.

61. Defendant's studies and records acknowledge that consumers increasingly seek foods sweetened primarily with honey instead of sugar and/or contain honey as a significant sweetening ingredient.

62. Plaintiff purchased the Product at locations including Pete's Fresh Market, 2333 W Madison St, Chicago, IL 60612, between February 1, 2022 and February 28, 2022, among other times.

63. Plaintiff believed and expected the Product was made with honey as its primary

9

sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

64. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

65. Plaintiff wanted to reduce his consumption of sugar ingredients and sought to purchase products sweetened primarily with honey and/or which contained honey as a significant sweetening ingredient.

66. Plaintiff bought the Product at or exceeding the above-referenced price.

67. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

68. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

69. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

70. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

71. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar honey and oat granola bars, because she is unsure whether those representations are truthful.

## Class Allegations

72. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Wyoming, Idaho, Kentucky, West Virginia, Kansas, North Dakota, Iowa, Mississippi, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

73. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

74. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

75. Plaintiff is an adequate representative because her interests do not conflict with other members.

76. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

(Consumer Protection Statute)

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Plaintiff believed the Product was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

82. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

83. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

84. Plaintiff relied on the representations and omissions to believe the Product was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

85. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

86. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

87. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

88. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

89. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

90. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

91. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

92. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

93. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

94. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

95. Defendant's representations affirmed and promised that the Product was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

96. Defendant described the Product so Plaintiff believed it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey, which became part of the basis of the bargain that it would conform to its affirmations and promises.

97. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

98. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand and the first producer of granola bars.

99. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

100. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

101. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

102. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

103. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

104. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

105. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

106. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

107. Defendant had a duty to truthfully represent the Product, which it breached.

108. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand and the first producer of granola bars.

109. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

110. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

111. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

112. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and

omissions, which served to induce and did induce, their purchase of the Product.

113. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

114. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made with honey as its primary sweetening ingredient instead of sugar, contained a non-de minimis amount of honey as an ingredient and was made of oats and honey.

115. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

116. Defendant knew of the issues described here yet did not address them.

117. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

118. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: May 29, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com